UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

LUIGI BONAFFINI,

|  |  |  |
|---|---|---|
|  | *Plaintiff*, | **Case No**.**20-cv-5118** |

-against-

THE CITY UNIVERSITY OF NEW YORK
and ANNE LOPEZ, as Provost,

*Defendants*

-------------------------------------------------------------X

# PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

**BALLON STOLL BADER & NADLER, P.C**.
*Attorneys for Plaintiff Luigi Bonaffini*
810 Seventh Avenue Suite 405
New York, New York 10019
Telephone: 212-575-7900
Facsimile: 212-764-5060

On the Brief:

Marshall B. Bellovin, Esq. (MB5508)
Sholom J. Prager, Esq. (SP 4659)

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...........................................................................................................ii

PRELIMINARY STATEMENT ....................................................................................................1

STATEMENT OF FACTS ............................................................................................................1

ARGUMENT ...............................................................................................................................6

THE MOTION TO DISMISS SHOULD BE DENIED ..................................................................6

STANDARD ON A MOTION TO DISMISS ...............................................................................6

POINT I .......................................................................................................................................7

   THE ELEVENTH AMENDMENT DOES NOT BAR PLAINTIFF'S ADA,
   ADEA NYSHRL OR NYCHRL CLAIMS .............................................................................7

POINT II ......................................................................................................................................9

   PLAINTIFF'S CLAIMS OF DISCRIMINATION ARE VALID CLAIMS ...............................9

   A. PLAINTIFF STATES A VALID CLAIM FOR DISCRIMINATION
      UNDER TITLE VII AND THE ADEA ............................................................................9

   1. Plaintiff Had Protected Status ........................................................................................ 10

   2. Plaintiff was Qualified ................................................................................................... 10

   3. Plaintiff Suffered Adverse Employment Actions ............................................................ 10

   4. Plaintiff's Allegations are Sufficient to Infer Discriminatory Intent ............................... 11

   B. PLAINTIFF STATES A VALID CLAIM FOR DISCRIMINATION
      UNDER NYSHRL AND NYCHRL .............................................................................. 16

   1. Plaintiff States a Valid Claim Under NYSHRL ............................................................. 16

   2. Plaintiff States a Valid Claim Under NYCHRL ............................................................. 16

   C. PLAINTIFF STATES A VALID CLAIM FOR DISCRIMINATION
      UNDER THE ADA ....................................................................................................... 18

CONCLUSION

**TABLE OF AUTHORITIES**

**Federal Court Cases**

*Ashcroft v. Iqbal*,
129 S.Ct. 1937 (2009) ................................................................................................. 6, 7

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ....................................................................................................... 6

*Buchwald v. Univ. of New Mexico Sch. of Med.*,
159 F.3d 487 (10th Cir. 1998) .............................................................................. 8, 9, 15

*Caskey v. County of Ontario*,
560 Fed. Appx. 57 (2d Cir. 2014) ................................................................................... 9

*Chambers v. TRM Copy Centers Corp.*,
43 F.3d 29 (2d Cir. 1994) ............................................................................................. 12

*City of Shelton v. Hughes*,
578 Fed. App'x 53 (2d Cir. 2014) ................................................................................... 8

*Cocca-Rau v. Standard Ins. Co.*,
No. 19-CV-06149(PMH), 2020 WL 4207442 (S.D.N.Y. July 22, 2020) .................... 13, 14

*Colbert v. FSA Store, Inc.*,
No. 19-cv-9828(LJL), 2020 U.S. Dist. LEXIS 73985 (S.D.N.Y. Apr. 27, 2020) .................... 12

*Dister v. Continental Group. Inc.*,
859 F.2d 1108 (2nd Cir. 1988) ..................................................................................... 12

*Dwyer v. Regan*,
777 F.2d 825 (2d Cir. 1985) ........................................................................................... 8

*Flint v. Dennison*,
488 F.3d 816 (9th Cir. 2007) .......................................................................................... 8

*Galabya v. New York City Bd. of Educ.*,
202 F.3d 636 (2nd Cir. 2000) .................................................................................. 10, 11

*Gibson v. American Broadcasting Co.*,
892 F.2d 1128 (2d Cir. 1989) ....................................................................................... 11

*Goenaga v. March of Dimes*,
51 F.3d 14 (2d Cir. 1995) ............................................................................................. 12

*Gorokhovsky v. New York City Hous. Auth.*,
552 F. App'x 100 (2d Cir. 2014) ................................................................................... 16

*Gorzynski v. Jetblue Airways Corp.*,
596 F.3d 93 (2d Cir. 2010) ............................................................................................. 9

*Harris v. Mills*,
572 F.3d 66 (2d Cir. 2009) ............................................................................................. 7

*Hongmian Gong v. City Univ. of N.Y.*,
18-cv-3027 (LGS), 2019 WL 952340, at *11 (S.D.N.Y. 2019) .......................................... 15

*Horsham v. Fresh Direct*,
136 F. Supp. 3d 253 (E.D.N.Y. 2015) ........................................................................ 9, 18

*Johnson v. Andy Frain Servs.*,
   638 F. App'x 68 (2d Cir. 2016)..................................................................................... 9

*Keating v. Gaffney*,
   182 F. Supp. 2d 278 (E.D.N.Y. 2001)................................................................... 11, 19

*Kinneary v. City of New York*,
   601 F.3d 151 (2d Cir. 2010)......................................................................................... 18

*Little v. National Broadcasting Co., Inc.*,
   210 F. Supp. 2d 330 (S.D.N.Y. 2002)......................................................................... 11

*Littlejohn v. City of New York*,
   795 F.3d 297 (2d Cir. 2015)..................................................................................... 9, 11

*Malkan v. Mutua,*
   No. 12-CV-236, 2012 U.S. Dist. LEXIS 143311, 2012 WL 4722688, at *7-8
   (W.D.N.Y. Oct. 3, 2012) (Arcara, J.)........................................................................... 8

*Maresco v. Evans Chemetics*,
   964 F.2d 106 (2d Cir. 1992)......................................................................................... 12

*Mauro v. New York City Dep't of Educ.*,
   No. 19CIV4372GBDKHP, 2020 WL 3869206 (S.D.N.Y. July 9, 2020) ................................ 17

*McDonnell Douglas Corp. v. Green,*
   411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973) ............................................. 12

*McGuinness v. Lincoln Hall*,
   263 F. 3d 49 (2d Cir. 2001)........................................................................................... 9

*Mesias v. Cravath, Swaine & Moore LLP*,
   106 F. Supp. 3d 431 (S.D.N.Y. 2015)......................................................................... 14

*Mihalik v. Credit Agricole Cheuvreux N. Am. Inc.*,
   715 F.3d 102 (2d Cir. 2013)......................................................................................... 16

*Minetos v. City Univ. of N.Y.*,
   875 F.Supp. 1046 (S.D.N.Y. 1995)........................................................................ 11, 19

*NAACP v. Merrill,*
   939 F.3d 470 (2d Cir. 2019).......................................................................................... 7

*Owen v. Thermatool Corporation*,
   155 F.3d 137 (2d Cir. 1998)......................................................................................... 12

*Payne v. N.Y.C. Police Dep't*,
   863 F. Supp. 2d 169 (E.D.N.Y. 2012)......................................................................... 16

*Perry v. State of N.Y. Dep't of Labor*,
   08-cv-4610, 2009 WL 2575713 (S.D.N.Y. Aug. 20, 2009, aff'd ................................ 14

*Renz v. Grey Advertising, Inc.*,
   135 F.3d 217 (2d Cir. 1997)......................................................................................... 12

*Richards v. N.Y.C. Dept. of Educ.*,
   2015 WL 414746 (S.D.N.Y. July 10, 2015) ................................................................ 18

*Rosario v. National Housing Partnership Property Mgmt., Inc.*,
   1998 WL 146027 (S.D.N.Y. March 26, 1998).................................................................... 11, 19
*Ruston v. Town Bd. for Town of Skaneateles*,
   610 F.3d 55 (2d Cir. 2010) ....................................................................................................... 6
*S. New England Tel. Co. v. Glob. NAPs Inc.*,
   624 F.3d 123 (2d Cir. 2010)............................................................................................. 7, 8, 12
*Scaria v. Rubin*,
   117 F. 3d 652 (2d Cir. 1997) .................................................................................................... 9
*Schnabel v. Abramson*,
   232 F.3d 83 (2d Cir. 2000) ....................................................................................................... 9
*Sinnett v. Delta Air Lines, Inc.*,
   278 F. Supp. 3d 599 (E.D.N.Y. 2017)..................................................................................... 15
*Sosa v. N.Y.C. Dep't of Educ.*,
   368 F. Supp. 3d 489, 500 (E.D.N.Y. 2019)....................................................................... 14, 15
*Stratton v. Dept.for the Aging for the City of New York*,
   New York, 132 F.3d 217 (2d Cir. 1997) ................................................................................. 12
*Swierkiewicz v. Sorema N.A.*,
   534 U.S. 506 (2002) ........................................................................................................... 13, 14
*Terry v. Ashcroft*,
   336 F.3d 128 (2d Cir. 2003)...................................................................................................... 9
*Treglia v. Town of Manlius*,
   313 F.3d 713 (2d Cir. 2002).............................................................................................. 10, 11
*Uwakwe v. Bridging Access to Care, Inc.*,
   No. 15-CV-06703 (DLI)(RER), 2017 U.S. Dist. LEXIS 38451, at *21-22 (E.D.N.Y.
   Mar. 16, 2017)........................................................................................................................ 15
*Valerio v. City of New York, 18-cv-11130*,
   2020 U.S. Dist. LEXIS 11443 (S.D.N.Y. 2020) ...................................................................... 9
*Velazco v. Columbus Citizens Found.*,
   778 F.3d 409 (2d Cir. 2015)..................................................................................................... 17
*Williams v. N.Y.S. Unified Court Sys. Office of Court Admin.*,
   16-cv-2061 (VSB), 2017 WL 4402562, at *30 (S.D.N.Y. Sept. 30, 2017) ............................ 15
*Wooding v. Winthrop University Hospital*,
   2017 WL 2559942 (E.D.N.Y., 2017)....................................................................................... 14
*Zimmerman v. Assocs. First Capital Group Corp.*,
   251 F.3d 376 (2d Cir. 2001)...................................................................................................... 9

**State Court Cases**
*Albunio v. City of New York*,
   16 N.Y.3d 472 (2011) .............................................................................................................. 17
*Bennett v. Health Mgmt. Sys., Inc.*,
   936 N.Y.S.2d 112, 120 (1st Dept. 2011)........................................................................... 12, 17

*Smith v. Glob. Contact Holding Co.*,
   2020 NY Slip Op 32015(U), ¶ 13 (Sup. Ct.)...........................................................................12
*Williams v. New York City Hous. Auth.*,
   61 A.D.3d 62 (1st Dep't 2009) ................................................................................................17

**Federal Statutory Authorities**
42 U.S.C. § 2000e et seq.............................................................................................................. 1
42 U.S.C. §12102(2) ..................................................................................................................18
42 U.S.C. §12111(5)(A)-(B) ......................................................................................................18
42 U.S.C. § 12122.......................................................................................................................... 1

**State Statutory Authorities**
N.Y. Exec. Law § 296.................................................................................................................... 1

**N.Y.C. Charter and Administrative Code**
N.Y.C. Admin. Code § 8-101 ....................................................................................................... 1

**Federal Rules and Regulations**
Fed. R. Civ. P. 12(b)(6).................................................................................................................. 6

**PRELIMINARY STATEMENT**

This action seeks to vindicate the rights of Plaintiff, a seventy-two (72) year-old Italian male suffering from a hearing loss disability, who was subjected to ongoing and continuous discrimination and constructive discharge based on national origin, age, and disability in violation of Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e *et seq.*) ("Title VII"), the New York State Human Rights Law (N.Y. Exec. Law § 296) ("NYSHRL"), the New York City Human Rights Law (Administrative Code § 8-101) ("NYCHRL"), the Americans with Disabilities Act of 1990 (42 U.S.C. § 12122 *et seq.*) ("ADA"), and the Age Discrimination in Employment Act ("ADEA"). Plaintiff submits this Memorandum of Law in Opposition to Defendant's Motion to dismiss the Amended Complaint. Plaintiff respectfully requests, for the reasons set forth below, that this Court deny Defendant's Motion in its entirety and grant any other and further relief that this Court deems just and proper.

**STATEMENT OF FACTS**

Plaintiff was a seventy-two (72) year old male at the time of filing his complaint and is of Italian origin. (Am. Compl. ¶ 22). Plaintiff was first hired by CUNY through Brooklyn College on or about September of 1977. (Am. Compl. ¶ 23). At all times herein mentioned Plaintiff was employed as a professor in Italian studies. (Am. Compl. ¶ 24). Plaintiff's area of expertise is Italian studies. (Am. Compl. ¶ 25). Plaintiff was teaching Italian studies throughout the whole time of his employment with CUNY through Brooklyn College. (Am. Compl. ¶ 26). During the forty-three (43) years of Plaintiff's employment, Plaintiff showed himself as a well-respected, knowledgeable and active member of the faculty. Plaintiff has published over forty (40) books and received several international prizes, including the Italian National Translation Prize. Plaintiff served as a chair of the Department of Modern Languages and Literatures of the School of

1

Humanities and Social Sciences for three years. Additionally, Plaintiff edits the International Journal of Italian Translation. (Am. Compl. ¶ 27). Plaintiff received excellent reviews from the students for the classes he taught. (Am. Compl. ¶ 28). Plaintiff is also a part of Italian Americans group, which is a protected Affirmative Action group at CUNY since 1974. (Am. Compl. ¶ 29).

This action was taken in 1974 due to widespread discrimination and under-representation of Italian Americans in the student body and faculty of CUNY schools. In so doing, the Chancellor of CUNY, at the time, deemed all Italian Americans to be a protected Affirmative Action group in addition to the groups already categorized by federal law. (Am. Compl. ¶ 30). Shortly after, the John D. Calandra Italian American Institute was created by the State legislature in 1979 and was reorganized as a division of CUNY in 1984. As noted, this was done to monitor any discriminatory conduct and/or under-representation of Italian Americans within the CUNY system. (Am. Compl. ¶ 31). Plaintiff, an Italian American, is within this protected category. (Am. Compl. ¶ 32). Furthermore, for the last several years Plaintiff experienced hearing loss constituting a disability. (Am. Compl. ¶ 33). At all times relevant hereto, Plaintiff's disability was known to Defendants. (Am. Compl. ¶ 34). For the last few years, Plaintiff was teaching courses fully online because of his hearing disability. (Am. Compl. ¶ 35).

On or about September 24, 2019, Plaintiff was called to a meeting with Provost Anna Lopez, a defendant herein. (Am. Compl. ¶ 36). The subject of the meeting was the college's Italian major program. In attendance were the Provost, The Dean of the School of Humanities and Social Sciences, Ms. Gould, the Chair of the Department of Modern Languages and Literatures, Vanessa Perez-Rozario, Plaintiff, Professor Claire Huffman, and Professor Fabio Girelli-Carasi. (Am. Compl. ¶ 37). At the abovementioned meeting, Provost Lopez informed the faculty of the Italian Division that the school was canceling the Italian major and that the courses needed for the Italian

2

major would no longer be available. (Am. Compl. ¶ 38). Additionally, Provost Lopez notified the professors at this same meeting that instead of teaching Italian, Plaintiff and other members of Italian faculty, namely Plaintiff, Professor Claire Huffman, and Professor Fabio Girelli-Carasi, would have to teach general education courses, courses in other departments, or be placed on administrative leave. (Am. Compl. ¶ 39). Plaintiff objected to this decision as the Italian program was a protected Affirmative Action group at CUNY as well as voiced his opinion regarding the fact that other considerations relating to the Italian studies program were not being taken into account. These objections were summarily dismissed by Defendant Lopez. (Am. Compl. ¶ 40). Defendant Lopez responded that the Italian faculty would then be teaching into their eighties and would owe the college many workload hours because of that. This comment was made as a direct statement regarding Plaintiff's age and in an attempt to "convince" him to retire. (Am. Compl. ¶ 41). Plaintiff's workload has always been up to date and any workload issue would only be caused by the cancellation of the Italian major. (Am. Compl. ¶ 42).

The Italian faculty, and specifically Plaintiff, was being singled out based upon his national origin and age. Furthermore, the Italian faculty, namely the Italian Professors, Plaintiff, Professor Claire Huffman, and Professor Fabio Girelli-Carasi, all of whom were sixty-four (64) years of age and older, and of Italian descent, were being singled out based upon their national origin and age; and specifically, Plaintiff was being singled out based upon his national origin and age. (Am. Compl. ¶ 43).

Shortly thereafter, on or about October 10, 2019, a meeting with Professor Perez Rosario, the Chair of the Department of Modern Languages and Literatures occurred, in which Plaintiff was present. (Am. Compl. ¶ 44). During that meeting, Professor Perez-Rosario informed the Italian Professors, that the future of the Italian program was in the hands of Provost Lopez and that per

3

her instructions all elementary Italian classes would be canceled in the Fall of 2019 and Spring of 2020 as well. (Am. Compl. ¶ 45).  This was despite the fact that all elementary Italian classes were filled to capacity (there were 100 students registered) for the period of Fall of 2019.  Nevertheless, Defendant Lopez decided to cancel them. (Am. Compl. ¶ 46).  Notably, none of the other language classes were canceled.  For example, Arabic and Japanese, which have neither a minor nor major at Brooklyn College, were assigned a full class for Spring 2020. (Am. Compl. ¶ 47).  The Italian classes, some of which Plaintiff was going to teach, were canceled due to Plaintiff's age and national origin, as well as the ages and national origins of the other Italian professors, Professors Claire Huffman and Fabio Girelli-Carasi, all of whom are above age 64 and of Italian descent. (Am. Compl. ¶ 48).

For the Spring 2020 semester, Plaintiff was assigned two English courses, one running at 9 a.m. and the other at 3 p.m., leaving Plaintiff with a five (5)-hour break between the two classes, something unheard of for a professor with Plaintiff's experience.  Moreover, these courses were beyond Plaintiff's area of expertise. (Am. Compl. ¶ 49).  Plaintiff was given this schedule as well as these classes because of his age and national origin in an attempt to push him into retirement based on his age and national origin. (Am. Compl. ¶ 50). Notably, other professors, unlike Plaintiff, were given regular schedules and not forced to teach subjects out of their disciplines and areas of expertise; and they included, but were not limited to Professors Mbom, Renner, Chang, Risso, Alonso, and Childers, teaching language courses other than Italian, including but not limited to Arabic and Japanese.  None of the aforementioned professors, Professors Mbom, Renner, Chang, Risso, Alonso, and Childers, were of Italian descent, or, above the age of sixty (60). (Am. Compl. ¶ 51).

Plaintiff tried to reach out to Provost Perez about Italian classes being offered in Spring of 2020, and specifically asked why the Italian program was being singled out and about the way that Plaintiff was being treated; yet, Defendant Perez never responded to him. (Am. Compl. ¶ 52). Furthermore, Defendants were forcing Plaintiff to teach subjects that were outside his area of expertise, and outside the scope of his teaching experience and discipline, thereby changing the terms and conditions of Plaintiff's employment; and furthermore, such activity on the part of Defendants constituted a blatant attempt to force Plaintiff to retire, by treating him adversely and differently than similarly situated employees. (Am. Compl. ¶ 53). Other professors, who were not Italian and not of the same age category as Plaintiff, were allowed to continue teaching within the subjects in which they were experts. These professors include Professors Mbom, Renner, Chang, Risso, Alonso, and Childers. (Am. Compl. ¶ 54). These actions, by Defendants, were adverse against Plaintiff based on his age and national origin, and clearly discriminatory as they did not allow Plaintiff to compete on an equal basis with other professors. (Am. Compl. ¶ (Am. Compl. ¶ 55).

In or about the beginning of September 2019, the Chair of the Department of Modern Languages and Literatures requested the faculty to submit their schedule for Spring of 2020. (Am. Compl. ¶ 56). As Plaintiff suffers from hearing loss, Plaintiff requested a reasonable accommodation of three (3) classes to be performed online, accompanied by an audiologist's note, recommending the same. (Am. Compl. ¶ 57). Notwithstanding this fact that Plaintiff provided a report from an audiologist with a recommendation for Plaintiff to teach online classes, Plaintiff received a registered letter dated September 6th from the head of Human Resources, Renita Simmons advising Plaintiff to redundantly see the Brooklyn College audiologist. (Am. Compl. ¶ 58). The medical examination that Plaintiff was directed to undergo was not job-related and

inconsistent with business necessities. (Am. Compl. ¶ 59). Plaintiff was willing and in fact attended the scheduled examination. (Am. Compl. ¶ 60). Plaintiff was later informed by the head of Brooklyn College's Human Resources that his request for accommodation was denied and he would be offered a classroom instead of online courses. (Am. Compl. ¶ 61). Although Brooklyn College widely offered online courses and that Plaintiff had successfully taught online classes in the past, Plaintiff's accommodation request was denied. (Am. Compl. ¶ 62). Other than to harass and to discriminate against Plaintiff, there was no reasonable basis or business necessity for defendants to cancel Italian courses and to deny Plaintiff's request for an accommodation due to his hearing loss. (Am. Compl. ¶ 63).

As a result of the discriminatory and humiliating treatment by the defendants based upon Plaintiff's age, national origin, and disability, Plaintiff was forced to retire and in fact did retire in the beginning of 2020. (Am. Compl. ¶ 64).

## ARGUMENT

## THE MOTION TO DISMISS SHOULD BE DENIED

## STANDARD ON A MOTION TO DISMISS

A complaint will survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) if it "contains enough facts to state a claim of relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1955 (2009). "Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 129 S.Ct. at 1950 (2009); *Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 58-59 (2d Cir. 2010). While

6

legal conclusions and "threadbare recitals of the elements of a cause of action" are not accepted as truth, a court must take a complaint's factual allegations to be true and draw all reasonable inferences in the plaintiff's favor. *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009) (quoting *Iqbal*, 129 S.Ct. 1937, 1949 (2009)).

As set forth below, Plaintiff's claims should not be dismissed as Plaintiff has established, through his complaint, a set of facts which state a claim for relief which is plausible on its face.

## POINT I

### THE ELEVENTH AMENDMENT DOES NOT BAR PLAINTIFF'S ADA, ADEA, NYSHRL, OR NYCHRL CLAIMS

Defendants argue they are protected from Plaintiff's ADA, ADEA, NYSHRL, and NYCHRL claims through sovereign immunity. (Def.'s Mem. Law Supp. Mot. Dismiss, 4). This is incorrect. The Eleventh Amendment does not bar suits against states and their agents if the state consents to suit . . . or the case falls within the "Ex parte Young" exception. *NAACP v. Merrill*, 939 F.3d 470, 475 (2d Cir. 2019). Here, Plaintiff's claims fall under the *Ex parte* Young exception.

A plaintiff's claim falls under the *Ex parte* Young exception if he (a) alleges an ongoing violation of federal law and (b) seeks relief properly characterized as prospective. *Id.* The first requirement is satisfied if the claim is "neither insubstantial nor frivolous." *Id.* A claim is "insubstantial" for purposes of rejecting federal jurisdiction if it is "implausible, foreclosed by prior decisions of the Supreme Court, or otherwise completely devoid of merit." *S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 133 (2d Cir. 2010). "It follows that a claim is not 'insubstantial' merely because it might ultimately be unsuccessful on its merits." *NAACP*, 939 F.3d at 475. The second requirement is satisfied if the relief sought is prospective: "not retrospective or designed to compensate for a past violation". *Id.* "In determining whether the

7

doctrine of *Ex parte* Young avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.*" City of Shelton v. Hughes*, 578 Fed. App'x 53, 55 (2d Cir. 2014).

Plaintiff's allegations—that CUNY administrators, and officials violated his rights by allegedly discriminating against him on the basis of his age, national origin, and disabilities. A violation is deemed ongoing when its detrimental impact continues into the present. *See Dwyer v. Regan*, 777 F.2d 825, 836 (2d Cir. 1985) (state employee's suit for reinstatement was not barred by the Eleventh Amendment even though the alleged violation—unlawful termination—took place in the past); *Malkan v. Mutua*, No. 12-CV-236, 2012 U.S. Dist. LEXIS 143311, 2012 WL 4722688, at *7-8 (W.D.N.Y. Oct. 3, 2012) (Arcara, J.) (derogatory information in personnel file constitutes an ongoing violation, separate from plaintiff's right to reinstatement); *see also Flint v. Dennison*, 488 F.3d 816, 824 (9th Cir. 2007) (negative information contained in student record constituted an ongoing violation, and was therefore not moot, where that information jeopardized student's future employment or college career); *Buchwald v. Univ. of New Mexico Sch. of Med.*, 159 F.3d 487, 494-96 (10th Cir. 1998) (defendants' refusal to admit plaintiff to medical school constituted an ongoing violation because plaintiff continued to be excluded from the school of her choice).

Here, Plaintiff satisfies both requirements.  As discussed below, Plaintiff's claims are substantial and non-frivolous.  Further, the facts alleged state that Plaintiff is seeking damages for compensation that would have been entitled to him had he been able to continue teaching at CUNY.  Additionally, Defendants continue to discriminate against the older Italian professors other than Plaintiff that remain employed by Defendants and other new, older/Italian professors.

8

(Am. Compl. ¶ 48). Thus, Plaintiff seeks relief "designed to compensate for" prospective—as well as "past"—violations. *Id.*

## POINT II

## PLAINTIFF'S CLAIMS OF DISCRIMINATION ARE VALID CLAIMS

### A.  PLAINTIFF STATES A VALID CLAIM FOR DISCRIMINATION UNDER TITLE VII AND THE ADEA

Title VII and ADEA claims are analyzed under the same analysis. *Caskey v. County of Ontario*, 560 Fed. Appx. 57, 58 (2d Cir. 2014); *Schnabel v. Abramson*, 232 F.3d 83, 87 (2d Cir. 2000).  While Defendants do not discuss the merits of Plaintiff's ADEA claims, Plaintiff has properly pleaded a *prima facie* case for that as well.  A plaintiff establishes a *prima facie* case of discrimination under Title VII and the ADEA, if (1) they are a member of a protected class; (2) they were qualified for the position held; (3) they suffered an adverse employment action; and (4) there is some minimal evidence suggesting an inference that their employer acted with discriminatory motivation. *Gorzynski v. Jetblue Airways Corp.*, 596 F.3d 93, 107 (2d Cir. 2010); *Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015); *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003); *Johnson v. Andy Frain Servs.*, 638 F. App'x 68, 70 (2d Cir. 2016); *Valerio v. City of New York*, 18-cv-11130, 2020 U.S. Dist. LEXIS 11443, at \*16 (S.D.N.Y. 2020); *Horsham v. Fresh Direct*, 136 F.Supp.3d 253, 261-62 (E.D.N.Y. 2015).  The burden of establishing a *prima facie* case is not onerous and has been frequently described by the Second Circuit as "minimal" and "*de minimis*". *Zimmerman v. Assocs. First Capital Group Corp.*, 251 F.3d 376 (2d Cir. 2001). *McGuinness v. Lincoln Hall*, 263 F. 3d 49, 53 (2d Cir. 2001); *Scaria v. Rubin*, 117 F.3d 652, 654 (2d Cir. 1997). Here, Plaintiff satisfies all elements.

9

### 1. **Plaintiff Had Protected Status**

For the first element, as a seventy-two (72) year-old Italian, Plaintiff was a member of protected classes under Title VII and the ADEA. (Am. Compl. ¶ 22).

### 2. **Plaintiff Was Qualified**

For the second element, Plaintiff taught Italian studies for forty-three (43) years; published over forty (40) books; received several international prizes—including the Italian National Translation Prize; served as a chair of the Department of Modern Languages and Literatures of the School of Humanities and Social Sciences for three (3) years; edited the international Journal of Italian Translation; received excellent reviews from the students for the classes he taught; and established himself as a well-respected, knowledgeable, and active member of the faculty. (Am. Compl. ¶¶ 23-28).  Thus, it is without dispute that Plaintiff was well qualified.

### 3. **Plaintiff Suffered Adverse Employment Actions**

For the third element, an adverse employment action is a materially adverse change in the terms and conditions of employment. *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000).  A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." *Id.*  An employer's action that causes a setback to an employee's career or results in a materially significant disadvantage is also an adverse employment action. *Id.*, at 641.  In addition, the Second Circuit has been explicit in holding that adverse employment actions do not have to result in a loss of income. *See Treglia*, 313 F.3d at 720 ("we have made clear that adverse employment actions are not limited to 'pecuniary emoluments'").  If the action results in "a . . .

10

setback to the plaintiff's career" or "causes materially significant disadvantage," then "an adverse employment action has occurred." *Galabaya*, 202 F.3d at 641.

Plaintiff was subjected to unprecedented, burdensome scheduling, forced to teach subjects out of his discipline and area of expertise (which he developed over decades), denied his requested disability accommodations to teach online courses even though Plaintiff has successfully taught online in the past, subjected to a redundant and unnecessary medical examination, and treated in such a discriminatory and humiliating manner, that he was forced to retire. (Am. Compl. ¶¶ 36-64). Thus, Plaintiff suffered multiple adverse employment actions. *See Treglia v. Town of Manlius*, 313 F.3d 713 (2d Cir. 2002), (unfavorable assignments constituted adverse employment action); *Gibson v. American Broadcasting Co.*, 892 F.2d 1128, 1134 (2d Cir. 1989) (burdensome schedule was adverse employment action); *Little v. National Broadcasting Co., Inc.*, 210 F.Supp.2d 330, 379 (S.D.N.Y. 2002); (same); *Keating v. Gaffney*, 182 F.Supp.2d 278, 289 (E.D.N.Y. 2001) (deliberate, unreasonable denial to accommodate disability constitutes constructive discharge: an adverse employment action); *Minetos v. City Univ. of N.Y.*, 875 F.Supp. 1046, 1052 (S.D.N.Y. 1995); (constructive discharge presumed a triable question of fact); *Rosario v. National Housing Partnership Property Mgmt., Inc.*, 1998 WL 146027, at *4 (S.D.N.Y. March 26, 1998) (same). Clearly, Plaintiff has established that he has suffered numerous adverse employment actions.

### 4. Plaintiff's Allegations are Sufficient to Infer Discriminatory Intent

For the fourth element, an inference of discriminatory intent can arise from circumstances including, but not limited to, the more favorable treatment of employees not in the protected group. *Littlejohn*, 795 F.3d at 312. Alternatively, "verbal comments can serve as evidence of discriminatory motivation when a plaintiff shows a nexus between the discriminatory remarks and

11

the employment action at issue." *Smith v. Glob. Contact Holding Co.*, 2020 NY Slip Op 32015(U), ¶ 13 (Sup. Ct.) (internal citations omitted); *see also, Colbert v. FSA Store, Inc.*, No. 19-cv-9828 (LJL), 2020 U.S. Dist. LEXIS 73985, at *10 (S.D.N.Y. Apr. 27, 2020) (discriminatory remarks by supervisors participating in temporally proximate adverse actions infers discriminatory motivation). Plaintiff's burden in establishing an inference of discrimination is "*de minimis*". *Goenaga v. March of Dimes*, 51 F.3d 14, 18 (2d Cir. 1995).  Plaintiff's protected status need not be the *only* factor motivating Defendant's discrimination but merely a *contributing* factor to establish discriminatory animus. *Renz v. Grey Advertising, Inc.*, 135 F.3d 217, 222 (2d Cir. 1997); *Stratton v. Dept. for the Aging for the City of New York,* 132 F.3d 217, 222 (2d Cir. 1997); *Bennett v. Health Mgmt. Sys., Inc.*, 936 N.Y.S.2d 112, 120 (1st Dep't 2011); *Owen v. Thermatool Corporation*, 155 F.3d 137, 139 (2d Cir. 1998).  Direct evidence proving whether a plaintiff's status in a protected class is a motivating factor in an employment action is difficult to find because those who discriminate deliberately try to conceal their discriminatory intent. *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir. 1994).  Moreover, discriminatory intent will rarely be demonstrated by "smoking gun" proof; rather, in most discrimination cases direct evidence of the employer's motivation is unavailable. *Dister v. Continental Group. Inc.*, 859 F.2d 1108, 1112 (2d Cir. 1988).  Accordingly, Plaintiff need not allege direct evidence to demonstrate that his status in a protected class was a motivating factor in adverse employment actions. *See McDonnell Douglas v. Green*, 411 U.S. at 802; *Maresco v. Evans Chemetics*, 964 F.2d 106, 110 (2d Cir. 1992).

Here, Plaintiff alleges more than the minimal evidence required to suggest an inference of discriminatory intent: Plaintiff was subjected to discriminatory remarks by supervisors participating in his temporally-proximate, adverse treatment; other named Italian professors over sixty-four (64) years old were likewise discriminated against; other named, similarly situated, non-

12

Italian, language professors under sixty (60) years old were not discriminated against; and Defendants widely offered the online course-format that they denied Plaintiff. (Am. Compl. ¶¶ 36-64). Specifically, Plaintiff, amongst other Italian professors, was met with clear discriminatory comments when Defendant Lopes asked whether they planned on teaching into their eighties.

Furthermore, as explained above, it was only the teachers of Italian descent that were treated in this manner and it was only their classes that were cancelled. Defendants attempt to explain one of their adverse actions listed in Section IIA3 of cancelling the Italian courses under the pretext that "student interest and enrollment in Italian courses was low". (Def.'s Mem. Supp. Mot. Dismiss, 14). However, all elementary Italian classes were filled to capacity (there were 100 students registered) for the period of Fall of 2019, when Defendants decided to cancel them. (Am. Compl. ¶ 46). Moreover, none of the other language classes were canceled. Even Arabic and Japanese, which have neither a minor nor major at Brooklyn College, were assigned a full class for Spring 2020. (Am. Compl. ¶ 47).

Defendants argue Plaintiff has not sufficiently alleged similarly situated employees in his complaint that were preferentially treated. This is unfounded. First, the burden of describing similarly situated employees at the pleading stage is minimal because a plaintiff may need discovery to find a proper comparator through disciplinary or attendance records, or direct evidence, such as internal memos, that suggest discriminatory intent. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510-12 (2002). *See, also, e.g., Cocca-Rau v. Standard Ins. Co.*, No. 19-CV-06149 (PMH), 2020 WL 4207442, at *3 (S.D.N.Y. July 22, 2020) (It is "incongruous to require a plaintiff, in order to survive a motion to dismiss, to plead more facts than he may ultimately need to prove to succeed on the merits if direct evidence of discrimination is discovered.") (quoting *Swierkiewicz*, 534 U.S. at 511-512).

13

Second, Plaintiff specifically names multiple non-Italian Professors under sixty (60) at the same Brooklyn College branch of CUNY that also specialized in language subjects who—unlike Plaintiff and other Italian, older Professors—were given regular schedules and not forced to teach subjects out of their disciplines and areas of expertise. (Am. Compl ¶ 51).    Specifically, the Amended Complaint sets forth the following comparator information at the pleading stage:

> 51.    Notably, other professors, unlike Plaintiff, were given regular schedules and not forced to teach subjects out of their disciplines and areas of expertise; and they included, but were not limited to Professors Mbom, Renner, Chang, Risso, Alonso, and Childers, teaching language courses other than Italian, including but not limited to Arabic and Japanese. Upon information and belief, none of the aforementioned professor, Professors Mbom, Renner, Chang, Risso, Alonso, and Childers, were of Italian descent, or, above the age sixty (60).

(Am. Compl. ¶51).

The comparator information in the Amended Complaint is sufficient at the pleading stage. *Sosa v. N.Y.C. Dep't of Educ.*, 368 F.Supp.3d 489, 500 (E.D.N.Y. 2019); ("Ordinarily, whether two employees are similarly situated for purposes of an employment discrimination claim presents a question of fact, rather than a legal question to be resolved on a motion to dismiss."); *Cocca-*, No. 19-CV-06149 (PMH), 2020 WL 4207442, at *3; *Swierkiewicz*, 534 U.S. at 510-512.

Third, the cases cited by Defendants where the "similarly situated" element was unsatisfied are distinguishable.  In *Perry v. State of N.Y. Dep't of Labor*, 08-cv-4610 (PKC), 2009 WL 2575713, at *11 (S.D.N.Y. Aug. 20, 2009, *aff'd*, 398 F. App'x 628 (2d Cir. 2010), the complaint included zero allegations of disparate treatment. In *Mesias v. Cravath, Swaine & Moore LLP*, 106 F. Supp. 3d 431, 437 (S.D.N.Y. 2015), the plaintiff failed to establish they were similarly situated to another employee because, *inter alia*, they did not allege they had the same job. Likewise, in *Wooding v. Winthrop University Hospital*, 2017 WL 2559942, at *10 (E.D.N.Y., 2017) "[t]he

14

complaint d[id] not state what positions the allegedly similar employees held [or] what their responsibilities were"; in *Williams v. N.Y.S. Unified Court Sys. Office of Court Admin.*, 16-cv-2061 (VSB), 2017 WL 4402562, at *30 (S.D.N.Y. Sept. 30, 2017), the plaintiff did not state the allegedly similar employees' job titles or how they were the same as the plaintiff's; and in *Uwakwe v. Bridging Access to Care, Inc.*, No. 15-CV-06703 (DLI)(RER), 2017 U.S. Dist. LEXIS 38451, at *21-22 (E.D.N.Y. Mar. 16, 2017), this Court held the accountant plaintiff failed on the similarly situated element because they did not compare themselves to other accountants or employees with similar jobs.  By contrast, Plaintiff here names other language professors at the same college "teaching language courses at  other than Italian;" and these named professors did not have their classes cancelled and were not treated in a discriminatory manner, as alleged in the Amended Complaint.  (Am. Compl ¶ 51).

Likewise, in *Sosa v. N.Y.C. Dep't of Educ.*, 368 F.Supp.3d 489, 499, 500 (E.D.N.Y. 2019), this Court stated that <u>naming</u> *one* similarly situated employee was sufficient at the motion to dismiss stage and only found no discriminatory animus because the teacher plaintiff failed to name **any** other teachers—unlike Plaintiff here, who <u>names several</u> language professors in the same branch. (Am. Compl ¶ 51).  In *Hongmian Gong v. City Univ. of N.Y.*, 18-cv-3027 (LGS), 2019 WL 952340, at *11 (S.D.N.Y. 2019), the court held a professor plaintiff failed to name similarly situated professors because, *inter alia*, they failed to name any professors with similar jobs or departments—unlike Plaintiff here, who names several professors who, like Plaintiff, were <u>language professors for the Brooklyn branch.</u>  Finally, in *Sinnett v. Delta Air Lines, Inc.*, 278 F.Supp.3d 599, 611 (E.D.N.Y. 2017), the plaintiff was dissimilar to those employees she compared herself to because, unlike them, she failed alcohol and drug tests during work hours: justifying her termination—unlike Plaintiff here and the other Italian professors, who did nothing to differentiate

15

themselves from the younger, non-Italian professors to justify their mistreatment.  Thus, all cases cited by Defendants that found preferentially treated employees dissimilar are unequivocally distinguishable.

Defendants lastly argue that other language professors outside Plaintiff's protected status that were given preferential treatment were not similarly situated to Plaintiff *because* they were given preferential treatment. (Def.'s Mem. Supp. Mot. Dismiss, 16).  Such an argument is absurd. By that standard, no discrimination plaintiff could ever successfully allege disparate treatment to similarly situated employees because the disparate treatment would make them no longer similarly situated.

Thus, Plaintiff's allegations satisfy all elements for discrimination under Title VII and the ADEA.

### B.  PLAINTIFF STATES A VALID CLAIM FOR DISCRIMINATION UNDER NYSHRL AND NYCHRL

#### 1.  Plaintiff States a Valid Claim Under NYSHRL

Discrimination claims under the NYSHRL require establishing the same elements as discrimination claims under Title VII and the ADEA, but are subject to a more lenient standard. *Payne v. N.Y.C. Police Dep't*, 863 F.Supp.2d 169, 179 n.5 (E.D.N.Y. 2012).  As discussed in Section IIA, *supra*, Plaintiff states a valid claim for discrimination under Title VII and the ADEA. Thus, *a fortiori*, Plaintiff states a valid claim under NYSHRL.

#### 2.  Plaintiff States a Valid Claim Under NYCHRL

Claims for discrimination under the NYCHRL are analyzed separately and under a more lenient standard than Title VII, the ADEA, and even NYSHRL claims. *Mihalik v. Credit Agricole Cheuvreux N. Am. Inc.*, 715 F.3d 102 (2d Cir. 2013); *Gorokhovsky v. New York City Hous. Auth.,*

552 F. App'x 100, 102 (2d Cir. 2014); *Velazco v. Columbus Citizens Found.*, 778 F.3d 409, 411 (2d Cir. 2015). The NYCHRL requires, "an independent liberal construction analysis" targeted to understanding and fulfilling the NYCHRL's "uniquely broad and remedial purposes," which go beyond those of counterpart state or federal civil rights law. *Bennett v. Health Mgt. Sys., Inc.*, 92 A.D.3d 29,936 (1st Dep't 2011). The Court of Appeals has emphasized that the Restoration Act's amendment of Section 8-130 of the NYCHRL was enacted to "ensure the liberal construction of the NYCHRL by requiring all provisions of the NYCHRL be construed broadly in favor of discrimination plaintiffs. *Albunio v. City of New York*, 16 N.Y.3d 472, 477 (2011).

In the summary judgment context (and certainly in the context of a motion to dismiss), the First Department cautioned against prematurely deciding discrimination cases when it stated, "We recognize that there has been a growing emphasis on using summary judgment in discrimination cases to promote 'judicial efficiency.' But at least in the context of the NYCHRL, the Restoration Act provides a clear and unambiguous answer: a central purpose of the legislation was to resist efforts to ratchet down or devalue the means by which those intended to be protected by the NYCHRL could be most strongly protected." *Williams v. New York City Hous. Auth.*, 61 A.D.3d 62, 66 (1st Dep't 2009). These concerns warrant the "strongest possible safeguards" against depriving an alleged victim of discrimination of a full and fair hearing before a jury of her peers through summary judgment. *See* 92 A.D.3d at 936. In short, evidence of pretext should in almost every case indicate to the court that a motion for summary judgment must be denied. 92 A.D.3d at 936. These same concerns that warrant "the strongest possible safeguards" in the summary judgment context would undoubtedly be amplified in the earlier stages of litigation, i.e. a Motion to Dismiss. *See* 92 A.D.3d at 936. The proper inquiry under the NYCHRL is whether Plaintiff was treated less well because of his protected status/disability. *Mauro v. New York City Dep't of*

17

*Educ.*, No. 19CIV4372GBDKHP, 2020 WL 3869206, at *3 (S.D.N.Y. July 9, 2020); *Richards v. N.Y.C. Dept. of Educ.*, 2015 WL 414746 (S.D.N.Y. July 10, 2015).

Here, as described in Sections IIA3 and IIA4, *supra*, Plaintiff was treated adversely while similarly situated other employees outside Plaintiff's protected status were not.  Thus, *a fortiori*, Plaintiff was certainly treated "less well" because of his protected status/disability.  Therefore, Plaintiff pleads a prima facie case under the NYCHRL as well.

## C. PLAINTIFF STATES A VALID CLAIM FOR DISCRIMINATION UNDER THE ADA

While Defendants do not discuss the merits of Plaintiff's ADA claims, Plaintiff would clearly be able to establish this claim as well.  To establish a *prima facie* case of unlawful disability discrimination, a plaintiff must show: (1) the defendant is covered by the ADA; (2) the plaintiff is known, or regarded by defendants to be, suffering from a disability within the meaning of the ADA; (3) the plaintiff was qualified to perform the essential functions of the job; and (4) the plaintiff suffered an adverse employment action because of their disability or perceived disability. *Horsham v. Fresh Direct*, 136 F.Supp.3d 253, 261-62 (E.D.N.Y. 2015); *Kinneary v. City of New York*, 601 F.3d 151, 155-56 (2d Cir. 2010).

Here, Plaintiff satisfies all factors. First, Defendants are covered by the ADA. *See* 42 U.S.C. §12111(5)(A)-(B). Second, a disability under the ADA is: "a physical or mental impairment that substantially limits one or more of the major life functions of [an] individual." 42 U.S.C. §12102(2). Major life activities include, but are not limited to, "seeing, **hearing**, eating, sleeping, walking, standing, sitting, reaching, lifting, bending, speaking, and breathing." *Id*. (emphasis added). Thus, Plaintiff's **hearing** loss was a disability under the ADA. Moreover, Plaintiff's accommodation request, audiologist recommendation, and redundant examination by Defendants'

18

audiologist put Defendants on notice of Plaintiff's disability in addition to Defendants already knowing of Plaintiff's disability. (Am. Compl. ¶¶ 33, 34, 57-60). Third, as discussed in Section IIA2, *supra*, Plaintiff was well qualified. Fourth, as discussed in Section IIA3, *supra*, Defendants, subjected Plaintiff to a redundant and unnecessary medical examination, denied Plaintiff's requested disability accommodations to teach online courses even though Plaintiff has successfully taught online in the past, and harassed Plaintiff to such extent that he was forced to retire. (Am. Compl. ¶¶ 36-64). Hence, Plaintiff suffered multiple adverse employment actions because of his disability. *See Keating*, 182 F. Supp. 2d at 289); *Minetos*, 875 F.Supp. at 1052; *Rosario*, 1998 WL 146027, at *4. Thus, Plaintiff states a valid claim for disability discrimination under the ADA.

## CONCLUSION

For the above-stated reasons, the Court should dismiss Defendants' motion to dismiss in its entirety and grant such other further relief as the Court deems just and proper.

DATED:     New York, New York
             March 11, 2021

BALLON STOLL, P.C.

By:   *s/Marshall B. Bellovin*
     Marshall B. Bellovin, Esq. (MB 5508)
     *Attorneys for Plaintiff*
     810 Seventh Avenue, Ste. 405
     New York, New York 10019
     (212) 575-7900

19